**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff,**

v.

**RINELLA & RINELLA, Defendant.**

**WOMEN EMPLOYED, an Illinois not-for-profit Corporation, as agent for and on behalf of Arlene Nagy, one of its members, and Arlene Nagy, Plaintiffs,**

v.

**RINELLA & RINELLA, and Samuel A. Rinella, Defendants.**

Nos. 74 C 2861, 75 C 702.

United States District Court, N. D. Illinois, E. D.

July 22, 1975.

OPINION

WILL, District Judge.

The two related lawsuits now pending before this Court, *Equal Employment Opportunity Commission v. Rinella & Rinella*, No. 74C 2861, and *Women Employed, et al. v. Rinella & Rinella, et al.*, No. 75C 702, both arise under Title VII of the Civil Rights Act of 1964, and involve charges of sex discrimination. Arlene Nagy was employed by the defendants [1] as a legal secretary from January 1971 to March 1973, when she resigned and from October 1973, when she was rehired, to July 10, 1974 when she was discharged. From March of 1974, she was also a member of Women Employed, an Illinois not-for-profit corporation whose purpose is to oppose discrimination based on sex and otherwise to work to improve the employment status and working conditions of women in Chicago, Illinois.

Between March 1973 and July 30, 1974, Ms. Nagy engaged in various activities in opposition to what she alleges to be unlawful employment practices by Rinella & Rinella, which discriminated against women. These activities included joining Women Employed, soliciting other women employees of Rinella & Rinella to join Women Employed, attending meetings and participating in the activities of Women Employed, and publicly alleging that Rinella & Rinella discriminated on the basis of sex in its health insurance benefits. On July 30, 1974, Samuel A. Rinella, the owner of the law firm, discharged Ms. Nagy because of her participation in these activities.

Women Employed, on August 26, 1974, filed a charge with the Commission stating that Rinella & Rinella, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), intentionally discriminated against Arlene Nagy by

Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., Peggy A. Hillman, for plaintiff.

Anna R. Lavin, Edward J. Calihan, Chicago, Ill., for defendant.

1. While two defendants are named in the second suit and we will use the plural throughout this opinion, as the later discussion will disclose, Rinella & Rinella is a one-man law firm owned by Samuel Rinella in which a number of lawyers are employed as associates.

unlawfully discharging her, and that the firm, by and through its partner, Samuel Rinella, intentionally discriminated against other female employees by interrogating them concerning their membership in Women Employed and threatening to discharge them if they joined or participated in the activities of Women Employed. The Commission conducted a preliminary investigation and the District Director of the Commission's Chicago District Office concluded, in accordance with Section 706(f)(2), that prompt judicial action in the form of preliminary relief was necessary to carry out the purposes of Title VII. Consequently, on October 7, 1974, the Commission filed a petition for preliminary relief against Rinella & Rinella pursuant to Section 706(f)(2), 42 U.S.C. § 2000e–5(f)(2) seeking, inter alia:

1. A preliminary injunction preventing defendants from interfering with or prohibiting employees from participating in the Commission's investigation.

2. A preliminary injunction preventing defendants from taking retaliatory action in violation of Section 704(a).

3. An order reinstating Arlene Nagy pending the investigation.

4. An order authorizing Arlene Nagy to receive back pay and all other benefits of her employment.

5. An order compelling the defendants to explain to their female employees that they will not interfere with the investigation or take retaliatory action.

During the pendency of this action, on February 24, 1975, the Commission under the signature of a deputy director of the Chicago District Office, issued a right-to-sue letter to Women Employed. Thereafter, on March 4, 1975, Women Employed, as agent for and on behalf of Arlene Nagy, and Arlene Nagy, filed the second lawsuit under Section 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1), seeking permanent relief in the form of:

1. An injunction restraining the defendants from discriminating against Arlene Nagy.

2. An order requiring defendants to reinstate Arlene Nagy.

3. An order authorizing Arlene Nagy to receive all back pay and other benefits of her employment.

4. A declaratory judgment finding defendants' policy of intimidating and interrogating employees to be discriminatory which should be eliminated.

The defendants have filed motions to dismiss both lawsuits raising numerous alleged jurisdictional and procedural deficiencies. Specifically, their totally non-frivolous claims include:

1. The court is without subject matter jurisdiction in that:

    a. The defendant does not qualify as an employer engaged in an industry affecting interstate commerce.

    b. The defendant has not continuously employed fifteen (15) or more persons.

2. A petition for preliminary relief involving an uninvestigated charge of discrimination does not involve a case or controversy.

3. There has been a failure to comply with statutory prerequisites in that:

    a. The original charge was filed by Women Employed and not the aggrieved party.

    b. The initial charge was not made within the 180 days required under 42 U.S.C. § 2000e–5.

    c. The second law suit was filed by Women Employed which is not an aggrieved party as required by the Act.

    d. The "Notice of Right to Sue Within Ninety Days" purporting to authorize the second action issued during the pendency of another action based upon the same facts and arising out of the same complaint filed before the Commission by Women Employed, violated 42 U.S.C. § 2000e–5(f)(1).

e. The "Notice of Right to Sue Within Ninety Days" is illegal and void since it was issued by a "Deputy Director", not by the Commission, nor was any provision made for, nor were defendants notified of, any right of review by the Commission.

4. Samuel A. Rinella, described as an agent of Rinella & Rinella, should be dismissed from the second suit as an improper party.

For the reasons set forth hereinafter, we find none of defendants' arguments offered in support of their motions to be meritorious and, accordingly, their motions to dismiss will be denied.

## I. SUBJECT MATTER JURISDICTION

The plaintiffs allege that the defendant law firm is an employer within the meaning of Section 701(b) of Title VII, 42 U.S.C. § 2000e(b) and is, therefore, subject to the proscriptions of the Civil Rights Act of 1964. The term "employer" is defined by the Act as:

. . . a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person . . . .

Title VII goes on to define an "employee" in almost unrestricted terms:

The term "employee" means an individual employed by an employer . . . .

The defendants admit that they employed at least eleven employees during the relevant period consisting of secretaries and other clerical personnel and law clerks. Ms. Nagy's status as an employee is contested by the defendants; however, it would appear that she constituted a twelfth employee. The firm also included a group of lawyers which ranged from six to eight during the period under investigation. It is the defendants' contention that, due to the nature of these attorneys' status, they were independent contractors and not employees of the firm. As such, defendants contend, their numbers may not be applied toward reaching the required fifteen employees, and, accordingly, the firm is beyond the purview of Title VII.

The defendants argue that a primary consideration in determining whether an individual is an employee is whether the employer had the power to direct, control and supervise the employee in the performance of his work. The defendants contend that the element of control is not present here. They stress that the lawyers associated with the firm divide fees on the basis of productivity pursuant to a pre-arranged agreement providing for periodic salary draws, that the attorneys have no fixed office hours, set their own vacation schedules, and fix the fees in those cases for which they have responsibility. They further claim that the lawyer to whom a case is assigned is solely responsible for working on that case and does not receive instructions or guidance.

■ While the defendants' representations would indicate that, as professionals, the attorneys associated with Rinella & Rinella are subject to minimal direct supervision, the conclusion that the defendants would have us accept— that professional employment situations are not covered by Title VII—clearly is not the case. That sections 701, 703 and 704(a) of Title VII were intended to reach "professionals" is borne out by the legislative history of the 1972 amendments to Title VII. In the course of Senate debate over a proposed amendment designed to exclude from Title VII physicians and surgeons employed by public or private hospitals, Senator Williams said:

As I stand here leading the debate on this measure, I try to think as a young person who has gone through that long, hard and expensive trail to be the graduate of a medical school, be he man or woman, black or white, or whatever national ancestry. I say

that in this Nation, which so badly needs doctors, it would be a terrible crime if because of ethnic background, sex, race or religion, the American people were denied the services of the new doctor.

That is exactly what this amendment would do. It would take from a doctor the protection that the Constitution gives him and would protect through this law. I think it would be against all that this country holds itself up to be, in an area of one of our greatest needs. 118 Cong.Rec. 1647.

In the same debate, Senator Javits stated:

One of the things that those discriminated against have resented the most is that they are relegated to the position of the sawers of wood and the drawers of water, that only the blue collar jobs and ditchdigging jobs are reserved for them; and that though they built America, and certainly helped build it enormously in the days of its basic construction, they cannot ascend the higher rungs in professional and other life.

Yet this amendment would go back beyond decades of struggle and of injustice and reinstate the possibility of discrimination on grounds of ethnic origin, color, sex, religion—just confined to physicians or surgeons, one of the highest rungs of the ladder that any member of a minority could attain—and thus lock in and fortify the idea that being a doctor or surgeon is just too good for members of a minority, and that they have to be subject to discrimination in respect of it, and the Federal law will not protect them. 118 Cong.Rec. 1463–64.

The proposed exclusion of physicians and surgeons was defeated.

The courts also have found little distinction between professional and non-professional job situations, concluding that, since the primary objective of Title VII is the elimination of the major social ills of job discrimination, discrimi-natory practices in professional fields are not immune from attack. See, *Kohn v. Royall, Koegel & Wells*, 59 F.R.D. 515, 521 (S.D.N.Y.1973), app. dis. 496 F.2d 1094 (2d Cir. 1974); *Hecht v. Cooperative for American Relief Everywhere, Inc.*, 351 F.Supp. 305 (S.D.N.Y.1972).

■ Accordingly, we do not find that the greater independence and authority generally afforded attorneys associated with smaller law firms precludes their being employees of the firm. Rather, the court must examine the totality of the firm's arrangements to determine whether an employer-employee relationship in fact exists. In the instant case, the evidence overwhelmingly supports a finding that the attorneys associated with Samuel Rinella in Rinella & Rinella are employees.

Samuel Rinella admits to being the sole owner of the firm of Rinella & Rinella. All of the other attorneys are associated with him in the practice of law. Samuel Rinella hires each of his associates and he has the authority to fire them. Samuel Rinella maintains that the reason that he has associates is to accommodate the amount of business he attracts and so he can have control over the cases.

Samuel Rinella refers significant numbers of his cases to his associates. For example, Charles Little estimates that 60 per cent of his work is assigned by Samuel Rinella (Charles Little deposition, p. 20), David Carlson spends 46–47 hours per week on cases referred by Samuel Rinella (Carlson deposition, p. 44) and Bernard and Richard Rinella say that 35 to 40 per cent of their work is on cases from Samuel Rinella (Bernard Rinella deposition, pp. 22, 36; Richard Rinella, p. 7). Associates' cases which are not referred directly from Samuel Rinella are also apparently considered firm work as most of the associates deposit the fees from their own cases in the firm bank account (John Rinella deposition, p. 12); Bernard Rinella deposition, pp. 23, 39–40, 45; Rich-

ard Rinella deposition, p. 9; Owen Doss deposition, p. 7).

Samuel Rinella also exerts considerable control over the compensation paid to those associated with his firm. While the attorneys' compensation, regular or bi-weekly salary draws out of the firm account with quarterly adjustments, is the result of negotiation and mutual agreement between Samuel Rinella and the individual attorney, no one disputes that Samuel Rinella has the final say with respect to the sums involved. The lawyers' compensation strongly resembles a salary in that it is regular and in round numbers, and there is no indication that an attorney has ever returned money to the firm following a quarterly adjustment or paid any interest. These factors controvert the defendants' suggestion that the draws are merely loans to independent contractors based upon expected earnings. Samuel Rinella also determines and pays the salaries of all secretarial and clerical employees.

Samuel Rinella owns all of the fixed assets. He provides office space to the associates for which they pay no rent. All of the furniture, books, office equipment, and the materials used by the attorneys are supplied by Samuel Rinella. He also hires, assigns and pays all of the secretarial and clerical employees who work for the associates. He maintains and pays for a health insurance program for all clerical employees and associated attorneys which lists all of the attorneys as employees.

Finally, all outward appearances to the public indicate that the attorneys are employed by the firm. The list of names on the law office's outer door, as well as the letterhead on the firm's stationery and billhead, suggest that the attorneys are working for the firm. The firm's stationery and billhead are apparently used by the associates on their own cases as well as those referred to them by Samuel Rinella. The firm's listings in various legal directories also suggest that the associates are employees. Since the firm is not a partnership, and the associates are not listed as "of counsel," it is only reasonable to conclude that they are employed by the firm.

Based upon all of these considerations, it is inconceivable that the associates of Rinella & Rinella could be considered anything but employees of the firm. Added to the secretarial and other clerical employees whom defendants concede to be employees within the meaning of Title VII, the law firm does employ more than the requisite fifteen employees, and therefore comes within its coverage.

## II.  INDUSTRY AFFECTING COMMERCE

■ The defendants contend that they are not engaged in an industry affecting interstate commerce due to the local nature of their business which involves predominately divorce litigation.[2] Few cases have dealt with whether the practice of law affects commerce. Of particular note is the National Labor Relations Board's decision in *Evans and Kunz, Ltd.*, 194 NLRB 1216 (1972), involving unfair labor charges levied against a small Phoenix law firm which confines most, if not all, of its activities to the practice of law solely within the state of Arizona. In that case, the Board upheld the Trial Examiner's decision that the firm was engaged in operations affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C. § 151 et seq. wherein "af-

2. The term "industry affecting commerce" is defined by Title VII as:

.  .  .  any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor-Management Reporting and Disclosure Act of 1959, and further includes any governmental industry, business, or activity. 24 U.S.C. § 2000e(h).

fecting commerce" is similarly defined.[3] The Board, however, exercised its discretion and declined to assert its jurisdiction concluding that "the effect of a labor dispute on commerce is not sufficiently substantial to warrant the exercise of jurisdiction." *Supra* at 1216. While we do not find the Board's decision defining jurisdiction in the context of a different statute with different policies and purposes to be controlling here, we do find its determination that a predominantly local law firm affects commerce to be germane and instructive.

A similar result may be inferred from the case of *Kohn v. Royall, Koegel & Wells, supra,* where the court, *sub silentio,* assumed jurisdiction over charges of sex discrimination brought under Title VII against a New York law firm. Consistent with these holdings, and in keeping with the general principle that remedial legislation such as Title VII should be liberally construed for jurisdictional purposes, we find that the dynamics inherent in a general law practice necessarily affects interstate commerce. This is especially so in light of the cases interpreting the interstate commerce requirements of the Civil Rights Act of 1964, most notably, *Katzenbach v. McClung,* 379 U.S. 294, 85 S. Ct. 377, 13 L.Ed.2d 290 (1964), which held that Ollie's Barbeque, a family owned restaurant catering only to local trade, was within the definition of commerce contained in Title II of the Civil Rights Act of 1964.

The incidents of interstate commerce are far more apparent in the instant case than they were in *Katzenbach v. McClung* and many of its progeny. Notwithstanding the defendants' divorce orientation, they admit that their practice encompasses other types of business, i. e., corporate, probate and real estate.

They further admit that various attorneys travel out of state on firm business. Samuel Rinella, for instance, travelled to London, England and to Arizona, and Richard Rinella travelled to Washington, D. C. The firm's long distance phone bill in calendar year 1974 was $1,277.01; its out-of-state travel expenses amounted to approximately $2,000 for the same year. The firm also purchased both office intercommunication equipment from an out-of-state company for $8,400, and law and reference books from out-of-state publishers billed at approximately $2,500. These various factors establish that Rinella & Rinella indeed affects interstate commerce and, accordingly, is subject to the proscriptions of Title VII.

## III. PROCEDURAL CHALLENGES

### A. FILING CHARGES WITH EEOC

The defendants object to the manner in which charges were originally filed by Women Employed with the EEOC, claiming that Women Employed lacked standing to bring charges on behalf of Arlene Nagy and those similarly situated, that Arlene Nagy, as the aggrieved party, did not file the sworn claim and, therefore, the charges are not based upon any sworn or affirmed charge instituted by any person having knowledge of the facts, and that the charges were not timely filed within the applicable 180 day period after the alleged unlawful employment practice occurred.

The defendants challenge to Women Employed's standing to file charges with the EEOC on Arlene Nagy's behalf is clearly without merit. Section 706(b) of Title VII, 42 U.S.C. § 2000e–5(b), provides for claims filed "by or on behalf of a person claiming to be aggrieved." This provision amends

---

3. Under the National Labor Relations Act, commerce means:
  . . . trade, traffic, commerce, transportation, or communication among the several States . . . . 29 U.S.C. § 152(6). "Affecting commerce" means:

. . . in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce. 29 U.S.C. § 152(7).

section 706(b) of the Civil Rights Act of 1964, which originally only authorized charges to be filed by a person aggrieved under oath or by a member of the Commission. As interpreted by the Commission in its own rules and regulations, the more liberal filing requirements of amended § 706(b) now provide that "[a] charge on behalf of a person claiming to be aggrieved may be made by any person, agency, or organization." 29 CFR § 1601.6. The charge of discrimination in the instant case, which reads,

> Women Employed on behalf of Arlene Nagy and other similarly situated women,

is affirmed by Harriet Wessling, Co-sponsor, Women Employed Secretaries Committee, to be true to the best of her knowledge, information and belief, and therefore comports with the requirements of Title VII and was properly filed.

■ Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), as amended, requires that a charge of discrimination must be filed within 180 days after the unlawful employment practice occurred. The act of firing Ms. Nagy which precipitated the filing of charges with the EEOC, occurred on July 30, 1974. Since charges were filed on August 23, 1974, this clearly comes within the statutory time period. The defendants, however, seem to suggest that Ms. Nagy has complained that certain discriminatory practices were present during the course of her employment, and that the time has run for her to file charges pertaining to these. The cases are legion which hold that the "existence of a continuing violation tolls the statute of limitations, satisfying the jurisdictional prerequisites of timely filing of EEOC charges." *Kohn v. Royall, Koegel & Wells, supra* at 518, n. 4, and the cases enumerated therein. Since discrimination surrounding the allocation of insurance benefits is clearly in the nature of a continuing violation, Women Employed was not pre-

cluded from raising this claim in their August 23, 1974 charge.

## B. CASE OR CONTROVERSY

The defendants claim that the Commission's attempt to seek preliminary relief is in conflict with Article III of the Constitution in that "Congress has apparently authorized this agency to invoke the jurisdiction of this Court as a 'holding action' while the agency goes about its business of determining whether or not it has a suit or a valid claim. Courts of the United States, defendants contend, are not authorized under the Constitution to engage in 'holding actions'". Rinella & Rinella thus moves to dismiss the first suit claiming that no case or controversy exists.

■ Pursuant to the statutory provisions of § 706(f)(2), the District Director of the Chicago District Office conducted a preliminary investigation and concluded that prompt judicial action was necessary to effectuate the purposes of Title VII. The Commission's petition thus is not merely conclusory or without foundation as defendants suggest.

The issues presented in the Commission's petition for preliminary relief are also neither hypothetical nor moot. Nor is the suit a "holding action." The Commission's allegations are antagonistic to the defendants, and rather than seeking an advisory opinion, they call for immediate injunctive relief by this court. Given the urgency attached to the situation by the Commission, especially where retaliation for opposing practices made unlawful by Title VII is alleged, a request for preliminary relief is both reasonable and proper and does no violence to the Constitution.

■ As defendants indicate, the Commission's § 706(f)(2) suit may, after completion of the administrative process, be expanded into a § 706(f)(1) suit seeking permanent relief. The defendants do not contend that the second suit here, which is an (f)(1) suit, does not constitute a case or controversy. Thus,

the defendants' objection is apparently only directed at the propriety and the sufficiency of the District Director's preliminary investigation as the basis for seeking preliminary relief pending a full investigation as a statutory prerequisite for permanent relief. However, as with any request for preliminary relief, it is up to the court to determine whether (1) there is a sufficient basis in fact for entering a preliminary injunction, (2) there is substantial likelihood that the plaintiff will ultimately prevail on the merits, and (3) the aggrieved party will suffer irreparable injury if not protected by an injunction. It is also common procedure after the entry of a preliminary injunction in a civil action for the parties to engage in further investigation and discovery to ascertain the validity of plaintiff's claims. Procedurally then, we find the preliminary action authorized by § 706(f)(2) is an accepted and appropriate form of relief, especially in Title VII litigation where swift and decisive action may be warranted to counteract invidious conduct or retaliation. As expressed in the legislative history:

> The importance of preliminary relief in actions involving violations of Title VII is central to ensuring that persons aggrieved under this title are adequately protected and that the provisions of this Act are being followed. Where violations become apparent and prompt judicial action is necessary to insure these provisions, the Commission or the Attorney General, as the case may be, should not hesitate to invoke the provisions of this subsection. Sub-Committee on Labor and Public Welfare, *Legislative History of the Equal Employment Opportunity Act of 1972*, at 1848.

Accordingly, we find that the first suit is proper under Article III of the United States Constitution.

## C.  EXHAUSTION

■ The defendants further claim that the Commission's petition for preliminary relief failed to allege deferral to an appropriate state agency, which the defendants claim is required under § 706(c) of Title VII before the courts may entertain an action. After receiving the charge in this case on August 23, 1974, the Commission did refer it to the Illinois Fair Employment Practices Commission (FEPC), an agency created by the Illinois Fair Employment Practices Act, with authority to investigate charges of unlawful employment practices, to determine whether there is substantial evidence of an unlawful employment practice, to conciliate, to issue complaints, to hold hearings, to issue cease and desist orders and to seek judicial enforcement of its orders. The Illinois FEPC waived jurisdiction over the charges on August 26, 1974, and the Commission assumed jurisdiction. This constitutes a sufficient deferral and termination of state proceedings under section 706(c). *Bauman v. Union Oil*, 400 F.Supp. 1021, (N.D.Cal.1973).

## D.  STATUTORY  PREREQUISITES FOR FILING THE SECOND SUIT FOR PERMANENT RELIEF

■ The defendants move to dismiss the second suit as to Arlene Nagy claiming that she did not personally either file a charge with the Commission, or receive a "Notice of Right to Sue Letter," and has therefore failed to comply with the preconditions for filing suit under § 706(f)(1). However, as previously discussed, Title VII authorizes charges to be filed on behalf of an aggrieved party before the Commission. Arlene Nagy was clearly named in the charge by Women Employed and the defendants unquestionably had notice of her claims. Also, the 90 day letter to sue was issued to Women Employed in their capacity as representative of Arlene Nagy, whose claims give rise to the cause of action, and necessarily must be encompassed in the authorization from the Commission. Arlene Nagy is thus not statutorily foreclosed from joining in the second action in her own right.

The defendants further argue that, under § 706(f)(1), only an aggrieved party may file suit in federal court, and, interpreting the term "aggrieved party" literally, only Arlene Nagy and not Women Employed could have brought suit. The defendants thus move to dismiss Women Employed because it lacks standing.

■■■ The courts have generally construed standing in the context of Title VII litigation as broadly as permitted under Article III. *Hackett v. McGuire Bros.*, 445 F.2d 442 (3d Cir. 1971). Recognizing that Title VII actions are as much public as private in nature, that claimants act not just for themselves but as private attorneys general. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), and that there is judicial economy in allowing like claims to be combined under one mantle, *Local 186, Int. Pulp, Sulphite & P. M. W. v. Minnesota Mining & Manufacturing Co.*, 304 F. Supp. 1284 (N.D.Ind.1969), the courts have permitted organizations to bring suit as "persons aggrieved." Given the remedial purposes underscoring Title VII, we agree that as a matter of policy, the "aggrieved party" concept should not be narrowly construed and should extend to representative groups such as Women Employed.

This conclusion is buttressed by the special facts of the instant case. The alleged discriminatory conduct here was in part directed toward Women Employed and has clearly had an impact on it. As expressed in *Sibley Memorial Hospital v. Wilson*, 160 U.S.App.D.C. 14, 488 F.2d 1338, n. 4 (1973):

> When Congress was addressing itself to the question of those who can seek remedial action, it used language reflective of the standing concepts articulated by the Supreme Court as "injury in fact" and interest "within the zone of those regulated by the statute or constitutional guarantee in question." *Association of Data Processing Organizations v. Camp.*, 397 U.S. 150,

152–153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). In *Hackett v. McGuire*, 445 F.2d 442 (3d Cir. 1971) . . . [the court said that . . . "[a]n aggrieved person obviously is any person aggrieved by any of the forbidden practices . . . ."

Since the defendants allegedly discharged Arlene Nagy for her affiliation with and participation in Women Employed, and they questioned other employees as to whether they were also affiliated, Women Employed has been affected by defendants' actions. Women Employed thus clearly has a stake in this controversy not only to protect its right to freely attract members, but also to ensure that the organization and its individual members can effectively oppose discriminatory practices which violate Title VII. Given the broad holding of *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1971) that an organizational plaintiff successfully pleads injury to itself when it pleads an injury to its members, citing *NAACP v. Button,* 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); and that the organizational plaintiff here has suffered direct injury distinct from that to its members; and that there is difficulty in ascertaining any purpose in allowing an organization to bring a representative complaint before the Commission but not before the courts, especially where there is danger of retaliation, we conclude that Women Employed is indeed a "party aggrieved" within the meaning of Title VII and has standing to bring suit on Ms. Nagy's behalf.

### E. PROPRIETY OF NOTICE OF RIGHT TO SUE

The defendants contend that the "Notice of Right to Sue Within Ninety Days" purporting to authorize the § 706(f)(1) action, issued during the pendency of the Commission's action for preliminary relief and based upon the same facts and arising from the same charge, is violative of 42 U.S.C. § 2000e–5(f)(1). In support, the defend-

ants rely principally upon *Crump v. Wagner Electric Corporation,* 369 F. Supp. 637 (E.D.Mo.1973), where the court in dismissing the private suit filed subsequent to the Commission's suit, held:

> The Court has reviewed the files, statutes, and pertinent legislative histories thereof. The intent of Congress was to avoid multiplicity of lawsuits under this Act. (See House Report No. 92–238, 1972 U.S.C.C. & A.N. p. 2148).

> Clearly, 42 U.S.C. 2000e–5(e) [*sic*] provides for intervention by the aggrieved person in a lawsuit brought by the E.E.O.C. Likewise, intervention in a civil action brought by the aggrieved person is available to the E.E.O.C.

> No purpose has been shown to conduct two independent lawsuits dealing with identical issues, and affording Henry Crump identical relief. This Court will, therefore, dismiss this action without prejudice, and plaintiff may, if he desires, make application to intervene in Cause No. 73 C 310(3).

Accord: *EEOC v. Huttig Sash & Door Co.,* 371 F.Supp. 848 (S.D.Ala.1974); *EEOC v. Cronin,* 370 F.Supp. 579 (E.D. Mo.1973).

■ The holdings in these cases, while standing for the salutary principle that duplicative litigation should be avoided, are inapposite to the situation created by the two related lawsuits here, in that all of the prior decisions involved multiple suits filed under § 706(f)(1), based upon the same cause of action, and seeking identical relief. Thus, while the statutory scheme precludes the filing of two identical suits, the suits pending in this instance are distinguishable by reason of the different subsections upon which they are based and the different forms of relief sought. The Commission's suit seeks only preliminary relief under § 706(f)(2), and the private plaintiffs suit seeks only permanent relief under § 706(f)(1), while arguably this may be to some extent form over substance, since various specific requests for relief included under the suits' respective prayers may have the same impact upon the defendants, i. e., the requests for reinstatement and back pay, there are others, i. e., the requests to enjoin the defendant from interfering with the investigation and to prevent retaliation which are clearly unique to the first suit, and the request for declaratory relief to eliminate defendants' alleged discriminatory practices which is unique to the second. Since the suits are not the same, we do not find that the charging parties should be precluded from seeking the full panoply of remedies under the statute.

Allowing the private parties to institute the second suit, however, does not diminish the desirability of consolidating the lawsuits to economize the time and effort of the court counsel and the litigants. It would have been preferable had the plaintiffs in the second suit sought to intervene in the first suit, as all parties seem to agree that the § 706(f)(2) prayer for temporary relief could have been expanded to include the permanent relief afforded under § 706(f)(1). However, as the plaintiffs point out, the provision allowing individual parties to intervene as a matter of right is found only in § 706(f)(1), and there is at least a question as to its applicability to § 706(f)(2) suits, given the temporary nature of the petition for preliminary relief. We need not deal with the complexities of the intervention question here as consolidation will accomplish the same purposes. Those cases which hold that only intervention and not consolidation is permissible where two identical § 706(f)(1) suits are filed, one by the Commission and the other by the aggrieved party, are inapplicable to the situation here and do not preclude the filing and consolidating of these lawsuits.

■ The defendants further argue that the "Notice of Right to Sue" letter was improperly issued by Roscoe Jones, Deputy District Director of the Chicago District Office, rather than by the Com-

mission as prescribed by the statute. Similar contentions have been raised in numerous other lawsuits and rejected. *McDonald v. General Mills*, 387 F.Supp. 24 (E.D.Cal.1974); *Lambert v. Sperry Rand Corp.*, 8 EPD ¶ 9819 (W.D.La. 1974); *Smith v. United Press International*, 8 EPD ¶ 9512 (S.D.N.Y.1974); *Sheffield v. Northrup Worldwide-Aircraft Services, Inc.*, 373 F.Supp. 973, (M.D.Ala.1974); *Morris v. Connecticut General Ins. Corp.*, 7 EPD ¶ 9405 (D. Conn.1974). The reasoning in *McDonald v. General Mills, Inc.*, is particularly apt:

> This court is in agreement with Judge Schnacke who held in *Stone v. E.D.S. Federal Corporation*, 351 F.Supp. 340 (Cal.1972) that the issuance of a right to sue notice was "no more than a formality" not involving the exercise of discretion and personal judgment, and that "[i]t would be foolish to hold that [the Commission] cannot delegate these clerical tasks to subordinates." As noted in *Krug v. Lincoln National Life Insurance Co.*, 245 F.2d 848, 853 (5th Cir. 1957) [cert. denied. 323 U.S. 749]; "the delegation of duties of a public office, the duties of which are so manifold and voluminous that they could not be actually and personally performed by the person holding office and charged with the performance of its duties" is appropriate where the duties are merely ministerial.

Consequently, the issuance of the "Notice of Right to Sue" letter by a Deputy Director after the applicable 180 day period was proper in this case.

## IV. SAMUEL RINELLA AS A PROPER PARTY DEFENDANT IN THE SECOND SUIT

The defendants also move to dismiss Samuel Rinella claiming that there is no basis under Title VII for bringing a complaint against an agent of an employer. Since the allegations of plaintiffs' complaint are directed against Samuel Rinella as an agent of Rinella & Rinella, the defendants contend that he is not subject to the Court's jurisdiction. The plaintiffs respond claiming that Samuel Rinella is not named solely in his capacity as agent but, since the interrogatories submitted in the Commission's case indicate that Samuel Rinella is the owner of Rinella & Rinella, a sole proprietorship (Answer 1), Samuel Rinella was acting in a manner binding not only on Rinella & Rinella, but was also acting in his own behalf. We agree. Since all of the actions complained of were actions taken by Samuel Rinella, the original charge filed with the Commission was against "Samuel Rinella of Rinella and Rinella", and subsequent discovery has shown that Samuel Rinella is Rinella & Rinella, we find that he is a proper party defendant.

The defendants make the additional argument that, because the original charge was filed against Samuel Rinella of Rinella & Rinella, that Rinella & Rinella itself has never been formally charged and should be dismissed. Alternatively, defendants contend that the "Notice of Right to Sue" authorized the filing of a suit against Rinella & Rinella, and not Samuel Rinella, and he is thus an improper party.

Under *LeBeau v. Libbey-Owens-Ford Co.*, 484 F.2d 798, 799 (7th Cir. 1973), Title VII, employment suits are permitted only against the respondent named in the charge. This decision is based upon the Congressional purpose of encouraging conciliation and voluntary settlement of disputes. An exception to the general rule is found in *Chastang v. Flynn & Emrich Co.*, 365 F.Supp. 957 (D.Md.1973), where the plaintiff brought an EEOC charge against her employer and not against the trust company also named in her judicial complaint. The court there held that these defendants were substantially identical and the policy of Title VII in giving the relevant parties an opportunity to mediate the dispute was met, thus upholding her suit. As similar substantial identity has been averred in the instant case, taking into account that Samuel Rinella is Rinella & Rinella, he had

knowledge of the complaint and he was the only party who could have engaged in conciliation discussions, he clearly constitutes a proper defendant in the second suit.

The types of hypertechnicalities resorted to by the defendants here are not favored by the courts when considering allegations of invidious discrimination. While we do not discern what advantage is gained by maintaining the suit against both Samuel Rinella and his one-man law firm, we will, however, permit the plaintiffs to proceed against both at this time.

## CONCLUSION

In summary, defendants' motions to dismiss for lack of jurisdiction, for failure to comply with statutory preconditions, for proceeding in violation of Article III of the Constitution, and for improperly naming Samuel A. Rinella as a defendant in the second action, are all denied. Cause No. 74 C 2861 and Cause No. 75 C 702 will be consolidated for the purpose of further discovery and trial if necessary. An order consistent with the foregoing will enter.