Byron C. GRAVES, Plaintiff,

v.

**METHODIST YOUTH SERVICES, INC., Defendant.**

No. 84 C 4402.

United States District Court, N.D. Illinois, E.D.

Dec. 24, 1985.

Richard K. Wray, Arnstein, Gluck & Lehr, Janis M. Gibbs, Chicago, Ill., for plaintiff.

Samuel W. Witwer, Jr., Witwer, Moran, Burlage & Witwer, Larry J. Hagen, Oak Park, Ill., for defendant.

Memorandum

LEIGHTON, District Judge.

Plaintiff, a Negro male, filed this multi-count suit against defendant, a social services organization operated by the Methodist Church. In Counts I and II, he alleges that defendant violated Title VII of the Civil Rights Act of 1964 by terminating him from his position as counselor on August 23, 1983, because of his race and religion. Plaintiff filed charges with the Illinois Human Rights Department and with the Equal Employment Opportunity Commission ("EEOC") on October 3, 1983, charging defendant with racial employment discrimination. The EEOC issued a Notice of Right to Sue which plaintiff received on May 11, 1984.

Count III, brought pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1976), alleges that he is a handicapped person, having a record of mental illness which defendant regarded as limiting his major life activities. However, plaintiff alleges he can perform the essential functions required of a counselor; he also alleges that he was discharged from his position as counselor because of his mental handicap. In Count IV, a pendent state law claim, plaintiff alleges the intentional infliction of emotional distress. He alleges that during his employment he was verbally harassed about his religion and his mental condition by his superiors and other employees. Further, he claims he was as-

saulted by unknown assailants who threw objects at him and damaged his car while he was at work, or while he was travelling to or from work. Defendant moves to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction.

In its motion as to Counts I and II, defendant contends that it is not engaged in an activity affecting interstate commerce; and therefore, this court lacks subject matter jurisdiction. It argues that for Title VII to be applicable, the alleged wrongful activity must fall within the definitions in 42 U.S.C. § 2000e. Subparagraph (h) of that section states that industry affecting commerce means "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce...." Subparagraph (g) defines commerce as "... trade, traffic, commerce, transportation, transmission or communication among the several states...." Defendant argues that it does not fall within these definitions because it is only a local concern: its board of trustees is made up of ministers of the Northern Illinois Conference of the United Methodist Church as well as members of local churches; it does not maintain any office or facility outside the state; it does not directly receive any federal funds; and it does not solicit funds outside the state or serve persons who live outside the state. Additionally, defendant asserts it is not a business or industry and does not charge for its services. Therefore, it thus concludes that the required interstate nexus does not exist.

In response to defendant's argument, plaintiff directs the court's attention to defendant's answers to interrogatories. Plaintiff asserts that defendant admitted purchasing various office supplies from companies such as Chemcraft, Public Office Supply, Shaw/Walker, Sears Roebuck and Co., W.J. Saunders and Holleb. Defendant also purchased office machines made by A.B. Dick, IBM, and Xerox. Plaintiff asserts that because these goods did not all originate in Illinois, defendant engaged in activity affecting interstate commerce. In further support of his argu-

ment, plaintiff refers the court to defendant's long-distance telephone bills between April 1983 and April 1984, wherein defendant was charged for telephone calls to such places as Pennsylvania, Connecticut, California, Texas, Wisconsin, North Carolina, Indiana, New York, etc. In response, defendant argues that its purchases of office supplies was a *de minimis* level of activity. Further, defendant states its out-of-state telephone bills amounted to $175.00, with many of the telephone calls resulting from unauthorized use by its wards. Thus, the issue as to Counts I and III is whether defendant engages in activity which affects interstate commerce so as to be subject to the provisions of Title VII, and to this court's jurisdiction.

As to Count III, defendant argues that since it receives no federal financial assistance, this court lacks jurisdiction because Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1976) is inapplicable to the facts alleged. The section states that:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

Section 505(a)(2), added to the Act by amendment via the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978, 29 U.S.C. § 794a(a)(2), makes available the "remedies, procedures and rights set forth in Title VI of the Civil Rights Act of 1964 ... to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such...."

A program or activity must therefore receive federal funding to meet the jurisdictional requisite of the Act. Again directing the court's attention to the interrogatories he propounded, plaintiff states that defendant answered and admitted receiving federal aid through the Illinois De-

partment of Children and Family Services ("DCFS") from which defendant receives 84.3% of its funds. Plaintiff points out that the funds from DCFS are reimbursed by the federal government under Title XX of the Social Security Act, 42 U.S.C. § 1397 *et seq.* Plaintiff thus concludes that because the United States government provides funds to DCFS, defendant is a recipient of federal assistance under the Rehabilitation Act. Defendant responds by arguing that the money it receives from DCFS at the time of distribution is the property of Illinois, even though the state is reimbursed with federal funds. Consequently, it does not receive federal funding and is not subject to claims under the Rehabilitation Act. Thus, the issue as to Count III is whether defendant receives federal funding, making it subject to the Rehabilitation Act and the jurisdiction of this court.

### Counts I and II, Title VII Claims

When jurisdictional allegations are questioned, the plaintiff has the burden of proving jurisdiction. *Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.,* 469 F.2d 416 (5th Cir.1972). Moreover, in a case involving a Title VII claim, the plaintiff has the burden of proving the requisite nexus with interstate commerce. *Equal Employment Opportunity Commission v. California Teachers Association,* 534 F.Supp. 209 (N.D.Cal.1982). Further, where a party raises a factual question concerning the jurisdiction of the district court, that court may properly look beyond the jurisdictional allegations of the complaint and review whatever evidence has been submitted to determine whether subject matter jurisdiction exists. *Grafon Corporation v. Hausermann,* 602 F.2d 781 (7th Cir.1979); *Western Transportation Co. v. Couzens Warehouse & Distributors, Inc.,* 695 F.2d 1033 (7th Cir.1982).

Shortly after the Civil Rights Act of 1964 was enacted, the Supreme Court addressed the interstate commerce requirement in *Katzenbach v. McClung,* 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) and *Heart of Atlanta Motel v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). In *Katzenbach,* a restaurant corporation brought an action seeking enforcement of its rights under the Civil Rights Act of 1964. In determining whether Congress had authority to regulate certain purely local activities because they affected interstate commerce, the court, relying on the test supplied in *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), stated:

> But even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a *substantial economic effect* on interstate commerce. *Id.* at 125, 63 S.Ct. at 89 [emphasis added].

The court concluded that frequent interstate travelers and $70,000 worth of food purchased by the restaurant, had a substantial economic effect on interstate commerce. In this way, the restaurant engaged in activity affecting interstate commerce, and thus was subject to regulation by Congress. *Katzenbach,* 379 U.S. at 294, 85 S.Ct. at 377. Accordingly, the question arises whether in this case, defendant's long-distance telephone calls totalling $175 and purchase of office supplies had a "substantial economic effect" on interstate commerce. In arguing that defendant engaged in activity affecting interstate commerce, plaintiff relies heavily on *EEOC v. Rinella & Rinella,* 401 F.Supp. 175 (N.D.Ill.1975).

In *Rinella,* the EEOC filed suit against Rinella & Rinella, a Chicago law firm, based on a charge that the firm had intentionally discriminated against female employees. The Commission alleged that the law firm was subject to the Civil Rights Act of 1964 because it was an employer within the meaning of Section 701(b) of Title VII, 42 U.S.C. § 2000e(b). Defendant moved to dismiss for lack of subject matter jurisdiction. Finding the law firm subject to claims under Title VII, the court held it had engaged in activity affecting interstate commerce. The court looked to the amount of out-of-state business in which the firm engaged, including travel, traveling expenses, long-distance telephone bills and

the purchase of equipment from out-of-state companies. Consequently, the court denied the defendant's motion to dismiss for lack of subject matter jurisdiction. *Id.* at 175, 182.

Defendant's activities in this case are easily distinguished from those in *EEOC v. Rinella & Rinella,* 401 F.Supp. 175 (1975). In that case, there was extensive out-of-state travel for business purposes amounting to approximately $2,000.00. In addition, the firm in *Rinella* purchased office equipment amounting to $8,400 and law and reference books amounting to $2,500.00 from out-of-state companies. *Id.* at 182. In this case, it has been shown that defendant purchased office supplies from out-of-state companies, but there is no indication that these purchases affected commerce. In other words, plaintiff states that these purchases amount to substantial economic dealings which affect interstate commerce, without showing the nature and amount of these purchases, much less their origin.

Further, plaintiff alleges that defendant's long-distance telephone bills are also indicative of substantial effect on interstate commerce. Plaintiff refers to the telephone bills because the court in *Rinella* included the firm's long-distance telephone bill of $1,277.01 as one of the factors in determining that it engaged in activity affecting commerce. *Rinella,* 401 F.Supp. at 182. However, the law firm's telephone bill of $1,277.01 is a far cry from the $175.00 long-distance charges incurred by the defendant over a one-year period, the same amount of time reflected in Rinella's charges, especially in light of many of defendant's telephone calls being the result of unauthorized use of its telephones by its wards.

Although there is no set of standards an activity must meet in order to determine whether it affected commerce within the meaning of the Civil Rights Act of 1964, the economic effect on interstate commerce must be substantial. *Katzenbach v. McClung,* 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (citing with approval

*Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942)). It is the opinion of this court that defendant's long-distance telephone charges amounting to $175.00, and purchase of office supplies from various companies, is not substantial; and in fact, is a *de minimis* level of activity. If this activity were found to affect interstate commerce, it is conceivable that no person or entity could be excluded from the definition of "industry ... activity affecting interstate commerce." Surely this was not the intent of Congress.

Analogous support for the result reached by this court may be found in cases before the National Labor Relations Board in which the board's jurisdiction was at issue. It has set a $500,000.00 standard for non-retail entities below which it will not assert jurisdiction. And it has determined that out-of-state purchases below this amount are not substantial and, therefore do not affect interstate commerce. *National Labor Relations Board v. Custom Excavating Inc.,* —— N.L.R.B. ——, 98 L.R.R.M. 2259, *enforced* 575 F.2d 1340 (7th Cir.1978); *Father Flanagan's Boys' Home and Boys Town Education Association,* 225 N.L.R.B. 782 (1976); *Cf., National Labor Relations Board v. Reliance Fuel Oil Corp.,* 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963). For these reasons, this court concludes that plaintiff has not met his burden of establishing that this court has jurisdiction over defendant under Title VII. Thus, the motion to dismiss Counts I and II must be granted.

*Count III, The Rehabilitation Act Claim*

The court must next determine whether it has jurisdiction pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1976) as alleged in Count III. First, the court must decide whether defendant is a recipient of federal funds. Recently, the Supreme Court affirmed the Third Circuit's conclusion that a college was subject to Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*) because it received indirect federal assistance. *Grove City College v. Bell,* 687 F.2d 684 (3d Cir.

1982), *aff'd*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984).

The college and its students sought to void the Department of Education's termination of students' financial aid; a large number of students enrolled in the college received Basic Educational Opportunity Grants (BEOGs) allocated by the Department of Education. The BEOGs were paid directly to the students; the college itself did not receive any direct federal or state assistance. However, the Department determined that the college received federal financial assistance via the students' BEOGs, and attempted to secure an Assurance of compliance with Title IX which prohibits sex discrimination in any education program receiving federal funds. *Grove City College*, 687 F.2d at 684.

In determining whether the college received indirect federal financial assistance, the court considered the Department of Education's contention that the institution fell within the definition of "recipient" in its regulations, 34 C.F.R. § 106.2(h). The Department argued that the college was a "recipient" because its students received the BEOGs from the federal government which were used to pay their educational expenses. The college, however, argued that Section 901 of Title IX did not apply to it, interpreting the statute to apply only to entities receiving direct rather than indirect federal aid. *Id.* at 684.

The court also considered the legislative history of Title IX, and concluded that it was consistent with the Department's position that Title IX applies not only to institutions receiving direct financial assistance, but also to those receiving indirect aid. The court stated, "... we are satisfied that monies which are paid to students, who in turn use those funds for their education, constitute no less a part of a college's revenues than federal monies paid directly to the institution itself." *Id.* at 693. Additionally, the court said that "the Department was well within its authority when it defined 'recipient' to include any institution which receives federal financial assistance through another recipient" *Grove City Col-*

*lege v. Bell*, 687 F.2d 684, 693 (3d Cir.1982), *aff'd*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984).

As the Department of Education issues regulations pursuant to Title IX, so the Office of the Secretary of Labor and the Department of Health and Human Services issue regulations pursuant to the Rehabilitation Act. In both instances, the term "recipient" is defined as:

> any state or its political subdivisions, any instrumentality of a state or its political subdivisions, any public or private agency, institution, organization, or other entity, or any person to which Federal financial assistance is extended directly or *through another recipient*, including any successor, assignee or transferee of a recipient, but excluding the ultimate beneficiary of the assistance.

29 C.F.R. § 32.3, 45 C.F.R. § 84.3(f) [emphasis supplied].

■ The phrase concerning receipt of federal assistance "directly or through another recipient" is the same as that used in the Department of Education's regulations (34 C.F.R. § 106.2(h)). Thus, when defendant received its funding from DCFS which was reimbursed by the federal government, this was equivalent to Grove City College receiving indirect federal funds through its students who received BEOGs. In both cases, federal funds were received "through another recipient." Consequently, relying on the Third Circuit's holding in *Grove City College*, and on the definitions of "recipient" in the regulations issued by the Office of the Secretary of Labor and the Department of Health and Human Services, this court concludes that defendant indirectly received federal funding. Since this is so, it is subject to the Rehabilitation Act. Accordingly, its motion to dismiss as to Count III must be denied.

■ Alternatively, defendant argues that even if it is found to receive federal funds, its motion to dismiss should be granted because the Rehabilitation Act does not apply to employees and employment discrimination. However, as plaintiff points out, the Supreme Court recently de-

**434**

termined that Section 504 of the Rehabilitation Act of 1973 was intended to reach employment discrimination. *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984).

In *Darrone*, the plaintiff brought suit against defendant for violation of his rights under Section 504 of the Rehabilitation Act.[1] He alleged that he had been employed by the defendant and that an accident, requiring amputation of his left hand and forearm, left him disabled. Afterward, the defendant refused to employ him. Defendant moved to dismiss and the district court granted the motion on the ground that plaintiff did not have standing to sue because he did not meet the "primary objective test." On appeal, the Third Circuit reversed and remanded. The court held that the cause of action for employment discrimination in cases brought pursuant to Section 504, was not limited to situations where a primary objective of federal financial aid was to provide or promote employment. *Darrone*, 104 S.Ct. at 1248.

The Supreme Court, in affirming the Third Circuit held that Section 504 was not limited to situations where the primary objective of the federal financial aid was to provide employment. Rather, "that section prohibits discrimination against the handicapped under 'any program or activity receiving Federal financial assistance.'" Therefore, the court concluded, "... it is unquestionable that the section was intended to reach employment discrimination." *Id.* at 1253. This being so, plaintiff in this case has standing to sue pursuant to that Act; and, accordingly, this court has jurisdiction. For these reasons, defendant's motion to dismiss as to Count III is denied.

Since Count IV is brought under the court's pendent jurisdiction and this court finds it has jurisdiction over Count III, this court also has jurisdiction over Count IV consequently, the defendant's motion to dismiss as to Count IV is denied. *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1361 (7th Cir.1985).

1. The deceased, Thomas LeStrange, originally brought the suit. Upon LeStrange's death, his

In summary, defendant's motion to dismiss Counts I and II is granted and its motion to dismiss Counts III and IV is denied.

administratrix, Darrone, was substituted as the respondent.