72 F.3d 127
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 THE NORTH CAROLINA LIFE AND ACCIDENT AND HEALTH INSURANCE
GUARANTY ASSOCIATION, Plaintiff-Appellant,
v.
ALCATEL NETWORK SYSTEMS, INCORPORATED, formerly known as
Alcatel Business Systems, Incorporated; The Alcatel
Investment and Savings PLAN TRUST Committee; Bankers Trust
Company of California, N.A.; First Union National Bank of
North Carolina; Mark D. Primm; Ira H. Dorf; Robert D.
Marangell; Steven J. Fry; Leif E. Thorsen; Ronald K.
Boyd; Marvin S. Edwards; Michael M. Friend; Michael K.
Robinson; Patrick J. Vogeler; RJR Nabisco, Incorporated;
Wachovia Bank of North Carolina, N.A., Defendants-Appellees.
TEXAS LIFE, ACCIDENT, HEALTH & HOSPITAL SERVICE INSURANCE
GUARANTY ASSOCIATION; National Organization of Life and
Health Insurance Guaranty Associations; Robert B. Reich,
Secretary of Labor, Amici Curiae.
 No. 95-1375.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1995.
Decided Dec. 18, 1995.
 
 ARGUED: Margaret Cain Lumsden, HUNTON & WILLIAMS, Raleigh, North Carolina; Robert D. Phillips, BOWLES & VERNA, Walnut Creek, California, for Appellant.
 Patricia Montgomery, Austin, Texas, for Amicus Curiae Texas Life. John Lester Sarratt, PETREE, STOCKTON, L.L.P., Raleigh, North Carolina; Hayden Judson Silver, III, MOORE & VAN ALLEN, P.L.L.C., Raleigh, North Carolina, for Appellees.
 ON BRIEF: Michael L. Unti, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellant.
 R. James George, Jr., Gary L. Lewis, GEORGE, DONALDSON & FORD, L.L.P., Austin, Texas, for Amicus Curiae Texas Life.
 Craig B. Wheaton, PETREE, STOCKTON, L.L.P., Raleigh, North Carolina; Curtis J. Shipley, MOORE & VAN ALLEN, P.L.L.C., Raleigh, North Carolina; Nigle B. Barrow, Jr., SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, Raleigh, North Carolina, for Appellees.
 Anthony R. Buonaguro, Senior Vice President and General Counsel, John F. Del Campo, NATIONAL ORGANIZATION OF LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATIONS, Herndon, Virginia; Stephen Goldberg, JORDEN, BURT & BERENSON, Washington, D.C.; James H. Fleming, SEYFARTH, SHAW, FAIRWEATHER & GERALDSON, San Francisco, California, for Amicus Curiae National Association. Thomas S. Wil
 Before MURNAGHAN, MICHAEL and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This declaratory judgment action arises from a dispute over whether Plaintiff/Appellant, The North Carolina Life and Accident and Health Insurance Guaranty Association, has the responsibility under North Carolina law to stand behind certain "guaranteed investment contracts" (GICs) issued by the insolvent Executive Life Insurance Company of California to two North Carolina-based employee benefit plans. The GICs "guaranteed" a high rate of interest, and Executive Life invested heavily in junk bonds to meet its obligations under the GICs.
 
 I.
 
 2
 Defendants Alcatel Network Systems, Inc. and RJR Nabisco, Inc. sponsor employee benefit (pension) plans for their employees. About 600 North Carolina residents are beneficiaries under the Alcatel plan, and about 7,800 North Carolinians are beneficiaries under the RJR Nabisco plan. These plans are administered in part by committees of current and former officers and employees of the two companies. In addition, defendant First Union National Bank of North Carolina is trustee of the Alcatel plan, and defendant Wachovia Bank of North Carolina, N.A. is trustee of the RJR Nabisco plan. Bankers Trust Company of California is alleged to have served as trustee of both plans.
 
 
 3
 The Guaranty Association is required by North Carolina law to cover certain obligations owed to North Carolina residents by insolvent insurance companies. All insurers doing business in North Carolina are required to be members of the Guaranty Association.
 
 
 4
 In the late 1980s the Alcatel and RJR Nabisco pension plans invested approximately $32 million in GICs issued by Executive Life. Executive Life became insolvent in 1991, and the company was placed into conservatorship in California. The North Carolina Guaranty Association (as well as other state guaranty associations) agreed to participate in a Plan of Rehabilitation that was approved in 1993 by the Los Angeles County Superior Court. Under the Plan of Rehabilitation, Executive Life creditors (such as life insurance policy beneficiaries and purchasers of annuities) will be paid some portion of their claims.
 
 
 5
 The Alcatel and RJR Nabisco pension plans chose to opt out of the California Plan of Rehabilitation. Instead, they initiated proceedings before the North Carolina Department of Insurance in an effort to force the Guaranty Association to assume in full Executive Life's liabilities under the GICs. Those proceedings are pending currently.
 
 
 6
 Several important state law coverage questions should be decided in the North Carolina administrative proceedings. One question is whether these Executive Life GICs are "covered policies" or "covered annuities" within the meaning of the North Carolina Guaranty Act. Another question is whether, as a matter of North Carolina law, the plans' decision to opt out of the California Plan of Rehabilitation precludes them from asserting their rights under the North Carolina Guaranty Act.[1] Still another question is whether the North Carolina Guaranty Act's limitation of coverage to $300,000 applies to each plan, or whether that limitation applies to each individual beneficiary under each plan.
 
 
 7
 The Guaranty Association filed a declaratory judgment action in the United States District Court for the Eastern District of North Carolina, seeking to determine its liability under North Carolina law for the Executive Life GICs. The Guaranty Association also asserted ERISA claims against the plan administrators and trustees, alleging that their decision to purchase GICs was a breach of fiduciary duty and that if the Guaranty Association is obligated to assume liability under the GICs, the Association would have subrogation rights against the plan administrators and trustees. The district court dismissed the action. First, relying primarily on Burford v. Sun Oil Co., 319 U.S. 315 (1943), and Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942), the district court abstained from deciding the state law coverage issues because of the pending administrative proceedings in North Carolina. Second, the district court held that the Guaranty Association did not currently have standing to bring the ERISA claims. The Guaranty Association appeals.[2]
 
 II.
 
 8
 After considering the record in this case, the briefs of the parties and of amici, and the oral arguments of the parties and of one amicus, we are of the opinion that the judgment of the district court should be affirmed. Accordingly, we affirm on the reasoning of the district court. See The North Carolina Life & Accident & Health Ins. Guaranty Ass'n v. Alcatel Network Systems, Inc., 876 F.Supp. 748 (E.D.N.C.1995).
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 The defendants claim that the effect of the opt-out decision is not before the North Carolina Department of Insurance. The hearing officer responsible for this case has said, however, that any relevant issue, including opt-out, will be dealt with if raised
 
 
 [2]
 We deny the defendants' motion to dismiss the appeal of the district court's dismissal of the state law coverage claims