**R. M. SMITH, Plaintiff,**

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, Defendant.**

**Civil Action No. 96–1604.**

United States District Court,
W.D. Pennsylvania.

May 21, 1997.

R.M. Smith, Pittsburgh, PA (pro se).

Richard C. Polley, J. Lawson Johnston, Joseph S.D. Christof, II, Christine A. Ward, Elizabeth T. Phillips, Dickie, McCamey & Chilcote, Pittsburgh, PA, John J. Kitchin, Robert W. McKinley, Swanson, Midgeley, Gangwere, Kitchin & McLarney, Kansas City, MO, for Defendant.

### OPINION and ORDER OF COURT

AMBROSE, District Judge.

Pending before the Court is the Motion to Dismiss of the Defendant, the National Collegiate Athletic Association ("NCAA"), to dismiss the complaint filed *pro* se by the Plaintiff, R.M. Smith ("Plaintiff" or "Smith") pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 12(b)(6). Plaintiff is alleging violation of section 1 of the Sherman Act, 15 U.S.C. § 1 and Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, as well as alleging a state law claim for breach of contract. For the reasons set forth below,

Defendant NCAA's Motion to Dismiss will be granted.

## STANDARD OF REVIEW

In deciding a motion to dismiss, all factual allegations and all reasonable inferences therefrom must be accepted as true and viewed in the light most favorable to the plaintiff. *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir.1988). A court may dismiss a plaintiff's complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss for failure to state a claim, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn*, 838 F.2d at 666. Further, courts construe *pro se* complaints, such as the ones *sub judice*, more liberally than complaints drafted by lawyers and grant dismissal of *pro se* complaints only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

## FACTS

The Plaintiff has alleged the following in her Complaint which, for purposes of this motion to dismiss I will accept as true. Plaintiff graduated from high school in 1991, became a member of the intercollegiate volleyball team at St. Bonaventure University in the fall of 1991 and played volleyball at St. Bonaventure during the 1991–92 and 1992–93 athletic seasons. As a student-athlete, Plaintiff participated in intercollegiate events in multiple states within the United States. While participating in these intercollegiate events throughout the United States, Plaintiff as a student-athlete received awards, benefits and expenses permitted under Article 16 of the NCAA Manual. Plaintiff did not, at her own election, participate in an intercollegiate sport at St. Bonaventure during the 1993–94 athletic season.

After graduating from St. Bonaventure, Plaintiff entered a Postbaccalaureate Program at Hofstra University, where Defendant NCAA denied eligibility to Plaintiff to participate in intercollegiate athletics during the 1994–95 athletic season. In 1995, Plaintiff entered into a second Postbaccalaureate Program at the University of Pittsburgh and again was denied eligibility by Defendant NCAA to play intercollegiate volleyball. Neither of the Postbaccalaureate programs entered into by Plaintiff were offered at St. Bonaventure, Plaintiff's undergraduate institution.

The basis for Defendant's denial to Plaintiff of eligibility to play intercollegiate sports during the 1994–95 and 1995–96 athletic seasons was its Postbaccalaureate Bylaw. The Postbaccalaureate Bylaw is enumerated as Bylaw 14.1.8.2 in the 1993–94 NCAA Manual and prohibits a student-athlete from participating in intercollegiate athletics at a postgraduate institution other than the one from which his or her undergraduate degree was obtained. Plaintiff otherwise was in good academic standing and in compliance with all other requirements to participate in intercollegiate athletics during the 1994–95 and 1995–96 athletic seasons. Both Hofstra University and the University of Pittsburgh appealed to the NCAA to waive the Postbaccalaureate Bylaw for Plaintiff but Defendant refused to waive the Bylaw with respect to Plaintiff and therefore, Plaintiff was denied athletic eligibility during the 1994–95 and 1995–96 athletic seasons.

Graduates from two-year colleges are eligible to compete at other Division I institutions.

## LEGAL ANALYSIS

I. *Plaintiff's Sherman Act Claim.*

At issue with respect to Plaintiff's Sherman Act claim is the Defendant's Postbaccalaureate Bylaw, which is enumerated as Bylaw 14.1.8.2 in the 1993–94 NCAA Manual and which prohibits a student-athlete from participating in intercollegiate athletics at a postgraduate institution other than the one from which his or her undergraduate degree was obtained. Plaintiff has alleged in her

Complaint that: (1) Defendant violated § 1 of the Sherman Act in that it engaged in a contract, combination, and conspiracy to place unlawful restraints upon the trade and commerce of intercollegiate athletics between the several states; (2) the creation and enforcement of Bylaws in the NCAA Manual are joint actions by the NCAA and its member institutions, including Hofstra University and the University of Pittsburgh; (3) the Defendant and member institutions contract, combine, and conspire to enforce the Bylaws in the NCAA Manual; (4) intercollegiate athletics are activities in or substantially affect interstate commerce; (5) Defendant denied Plaintiff intercollegiate athletic eligibility during the 1994–95 and 1995–96 athletic seasons; (6) the NCAA's decision to deny Plaintiff athletic eligibility was solely based upon the Postbaccalaureate Bylaw, found at Bylaw 14.1.8.2 of the 1993–94 NCAA Manual; (7) Hofstra University and the University of Pittsburgh both appealed to the Defendant to waive the Postbaccalaureate Bylaw for Plaintiff but the Defendant refused; (8) as a direct result of the NCAA's refusal to waive the Postbaccalaureate Bylaw, Plaintiff was denied athletic eligibility during the 1994–95 and 1995–96 athletic seasons; (9) by an unreasonable restraint of trade, Plaintiff was injured in her business and property by not being permitted to participate in intercollegiate athletics at Hofstra University and the University of Pittsburgh during the 1994–95 and 1955–96 athletic seasons; (10) the Defendant's enforcement of the Postbaccalaureate Bylaw has an adverse anticompetitive effect, impairs and destroys competition and is unreasonable; and (11) enforcement of the Postbaccalaureate Bylaw cannot be justified by the NCAA especially when graduates from two-year colleges are eligible to compete at other Division I institutions. Complaint, ¶¶ 9–19.

Defendant first argues that Count I of Plaintiff's Complaint, which alleges that Defendant violated § 1 of the Sherman Act, must be dismissed for failure to state a claim upon which relief can be granted. Specifically, Defendant asserts that said claim must be dismissed because "[t]he alleged unlawful activities are not of a 'commercial' nature and therefore do not fall within the purview of the Sherman Act," or alternatively, if the Sherman Act is applicable to the facts as alleged by Plaintiff, because "the enforcement of the NCAA Bylaws are reasonable, and therefore lawful, as a matter of law." Defendant's Motion to Dismiss, ¶¶ 6–7. Thus, the threshold inquiry is whether or not the Sherman Act is even applicable to the instant claim by Plaintiff.

Section 1 of the Sherman Act states in pertinent part: "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal[.]" 15 U.S.C. § 1. As explained by the United States Supreme Court in *Apex Hosiery Co. v. Leader et al.*, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940):

> [The Sherman Act] was enacted in the era of 'trusts' and of 'combinations' of businesses and of capital organized and directed to control of the market by suppression of competition in the marketing of goods and services, the monopolistic tendency of which had become a matter of public concern. The end sought (by these laws) was the prevention of the restraints to the competition in business and commercial transactions which tended to restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services, all of which had come to be regarded as a special form of public injury.

*Id.* at 472–73, 60 S.Ct. at 985. The Court has further noted that "[t]he Court in *Apex* recognized that the [Sherman] Act is aimed primarily at combinations having commercial objectives and is applied only to a very limited extent to organizations ... which normally have other objectives." *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 214 n. 7, 79 S.Ct. 705, 710 n. 7, 3 L.Ed.2d 741 (1959). Plaintiff claims that Defendant violated § 1 of the Sherman Act in that through its Postbaccalaureate Bylaw, it "engaged, combined and conspired to place unlawful restraints upon the trade and commerce of intercollegiate athletics between the several states." Complaint, ¶ 9.

While the question of whether the Sherman Act reaches the actions of the NCAA when, through the Postbaccalaureate Bylaw, it sets eligibility standards for postgraduate student-athletes in intercollegiate athletics, has never been addressed by the federal courts, the courts have examined the applicability of the Sherman Act in relation to other NCAA rules, regulations and plans. Thus, in *National Collegiate Athletic Association v. Board of Regents,* 468 U.S. 85, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984), the United States Supreme Court held that an NCAA plan that restricted the televising of the games of NCAA member institutions violated § 1 of the Sherman Act because it constituted a restraint upon the operation of a free market. To the contrary, in *Jones v. National Collegiate Athletic Association,* 392 F.Supp. 295 (D.Ma.1975) and *Gaines v. National Collegiate Athletic Association,* 746 F.Supp. 738 (M.D.Tn.1990), district courts held that the Sherman Act does not reach the actions of the NCAA in setting eligibility standards where NCAA eligibility rules barred student-athletes at their member institutions from participating in intercollegiate sports after (1) a student-athlete had played multiple seasons with various "amateur" teams, receiving compensation therefore (*Jones* ) and (2) a student-athlete had entered the National Football League draft (*Gaines* ).[1] Notably, in so holding, the *Jones* court explained:

> [t]he plaintiff is currently a student, not a businessman in the traditional sense, and certainly not a 'competitor' within the contemplation of the antitrust laws. The 'competition' which the plaintiff seeks to protect does not originate in the marketplace or as a sector of the economy but in the hockey rink as part of the educational program of a major university. And, of equal significance, plaintiff has so far not shown how the action of the N.C.A.A. in setting eligibility guidelines has any nexus to commercial or business activities in which the defendant might engage.

*Id.* at 303. Similarly, in *College Athletic Placement Service, Inc. v. National Collegiate Athletic Association,* 1974 WL 998, (D.N.J. August 22, 1974), *aff'd,* 506 F.2d 1050 (3d Cir.1974), the United States District Court for the District of New Jersey held that "[t]he NCAA's action in ratifying an amendment to its Constitution for the purpose of preserving educational standards in its member institutions does not come within the purview of the Sherman Act." *Id.* at *4. In *College Athletic Placement Service, Inc.,* the provision at issue forbade eligibility to student-athletes who agreed or had agreed to be represented by an agent or other marketing organization. · Additionally, the United States Supreme Court has stated with respect to NCAA regulations and the Sherman Act that "[t]he specific restraints on football telecasts that are challenged in this case do not, however, fit into the same mold as do rules defining the conditions of the contest, *the eligibility of participants,* or the manner in which members of a joint enterprise shall share the responsibilities and the benefits of the total venture." *Board of Regents,* 468 U.S. at 117, 104 S.Ct. at 2969 (emphasis added). *But see Banks v. NCAA,* 746 F.Supp. 850, 857 (N.D.Ind.1990) ("[t]he Supreme Court cited *Jones* with apparent approval in *NCAA v. Board of Regents,* 4[68] U.S. at 102, n. 24, 104 S.Ct. at 2961 n. 24. Nonetheless, after a careful reading of *NCAA v. Board of Regents,* this court is unwilling to rely on a single district court opinion [*Jones* ] for the conclusion, sought by the NCAA, that the antitrust laws have no application to NCAA regulations concerning eligibility.").

■ Thus, based upon a reading of the relevant case law, it is clear that the Sherman Act is applicable to the NCAA with respect to those actions of the Defendant that are related to its commercial or business activities, but only to those such activities. *See also Justice v. National Collegiate Athletic Association,* 577 F.Supp. 356, 383

---

1. Like Plaintiff in the case *sub judice,* the plaintiff in *Jones* had alleged that his exclusion from participation in college sports reduced competition and thereby violated § 1 of the Sherman Act. In *Gaines,* the plaintiff argued that the defendants, by preventing college football players like himself from returning to college play for which they are otherwise eligible after an unsuccessful bid in the NFL draft, engaged in an unlawful exercise of monopoly power in violation of § 2 of the Sherman Act.

(D.Ariz.1983) ("[i]n sum, it is clear that the NCAA is now engaged in two distinct kinds of rulemaking activity. One type . . . is rooted in the NCAA's concern for the protection of amateurism; the other type is increasingly accompanied by a discernible economic purpose.").

■ Having so found, after careful consideration of the submissions of the parties and the case law on this issue, I can only conclude that the actions of the NCAA in refusing to waive the Postbaccalaureate Bylaw and allow the Plaintiff to participate in intercollegiate athletics is not the type of action to which the Sherman Act was meant to be applied. In other words, there is simply no logical way to conclude (through enforcement of the Postbaccalaureate Bylaw) that the NCAA is attempting to provide itself and its member institutions with a commercial advantage or that the result of the implementation of the Postbaccalaureate Bylaw is to provide the NCAA and its member institutions with any commercial advantage. Accordingly, Defendant's Motion to Dismiss Count I of Plaintiff's Complaint is granted for failure to state a claim upon which relief can be granted and Count I of Plaintiff's Complaint is dismissed.

## II. *Plaintiff's Title IX Claim.*

Count II of Plaintiff's claim alleges that Defendant has violated Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, in that it has granted a disproportionate number of waivers of its Bylaws to male student-athletes. Defendant moves to dismiss this claim on the basis that (1) Plaintiff has failed to allege that Defendant is a recipient of federal financial assistance and (2) Plaintiff cannot establish that it is a recipient of federal financial assistance which would render it subject to Title IX.[2]

In response, Plaintiff does not address Defendant's first argument, that she failed to plead that Defendant is a recipient of federal funding. Rather, Plaintiff focuses upon the second argument raised by Defendant, namely that Plaintiff cannot establish that Defendant is a recipient of federal funding. Specifically, Plaintiff argues that:

> in the instant case, the NCAA enacts legislation to govern and operate intercollegiate athletics, which is an educational program or activity. Further, the defendant benefits greatly when students receive financial aid. If such funds were not available, student-athletes might not otherwise be financially able to participate in athletic programs due to the student-athletes's income limitations. Possibly, financial aid may be premised on the participation in intercollegiate athletics, especially when the NCAA Manual places limitations and regulations on the receipt of federal financial aid for student-athletes. Further, although the income may not go directly back to the NCAA, the funding may ultimately be paid from the member institution to the NCAA in membership dues or other fees.

Plaintiff's Opposition Brief, p. 6. Plaintiff further argues on this point that "[a]s a matter of public policy, this Court should subject NCAA actions regarding the operation of educational institutions to Title IX scrutiny." *Id.*

Defendant, in its Reply Brief in Support of Motion to Dismiss ("Defendant's Reply Brief") counters Plaintiff's contentions by arguing:

> [while] Plaintiff argues the NCAA indirectly receives federal aid by passing rules which govern the operation of intercollegiate athletics, she does not allege the NCAA receives federal funds to administer its programs or that the NCAA administers any federal funds in adopting rules which govern the operation of intercollegiate athletic events. Plaintiff simply strains an argument by attempting to stretch the definition of "recipient" to include the

---

**2.** Defendant also argues that Plaintiff can offer no facts to support her conclusory allegation that the NCAA has engaged in sexual discrimination by granting more waivers of its Postbaccalaureate Bylaws to male student-athletes than female student athletes. This basis for dismissal of Count II is not, however, pled in its motion to dismiss and therefore, will not be considered in addressing Defendant's motion to dismiss. Further, I also note that in deciding Defendant's motion to dismiss Plaintiff's Title IX claim, I have not considered any of the extraneous documentation attached to Defendant's motion to dismiss.

NCAA because its rules affect students who may receive federal aid and also participate in intercollegiate athletics. There simply is no legal basis to extend the definition beyond the purpose of Title IX, which is to prevent the use of federal resources to support gender discrimination in connection with these programs.

\*   \*   \*   \*   \*   \*

Because Plaintiff does not claim the NCAA administers federal funds in any way, she cannot show the NCAA used federal funds to promote or support gender discrimination.

Defendant's Reply Brief, pp. 3–4.

Title IX states: "[n]o person in the United States shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Thus, Title IX prohibits sex discrimination under any education program or activity receiving federal funds. "Recipient" is defined as:

> any state or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution or organization, or other entity, or any other person, to whom Federal financial assistance is extended directly or through another recipient and which operates an educational program or activity which receives or benefits from such assistance, including any subunit, successor, assignee or transferee thereof.

34 C.F.R. § 106.2(h) (1997). As explained in *Favia v. Indiana University of Pennsylvania*, 812 F.Supp. 578 (W.D.Pa.) *aff'd*, 7 F.3d 332 (3d Cir.1993), Title IX "was intended to prevent the use of federal resources to support gender discrimination." *Id.* at 584, *citing, Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

■ Addressing first Defendant's argument that Plaintiff's Title IX claim must be dismissed because of Plaintiff's failure to allege that the NCAA is a recipient of federal funds, although Plaintiff is appearing *pro se* and accordingly, I must construe her Complaint more liberally than a complaint drafted by an attorney and grant dismissal of said Complaint only if it appears beyond doubt that she can prove no set of facts in support of her claim that would entitle her to relief, the fact remains that as pleaded, Plaintiff has not alleged that the NCAA is a "recipient" of federal funding. Absent such an allegation, I must conclude that she has failed to state a claim upon which relief can be granted and therefore, grant Defendant's Motion to Dismiss Count II of Plaintiff's Complaint.

■ Moreover, even assuming that I could infer from Plaintiff's Complaint that she had pleaded that Defendant was a recipient of federal funds based upon the "connections" with federal funding listed in Plaintiff's Opposition Brief and discussed above, i.e. because the NCAA enacts legislation to govern and operate intercollegiate athletics, which is an educational program or activity, because the NCAA benefits greatly when students receive financial aid in that were such funds not available, student-athletes might not otherwise be financially able to participate in athletic programs due to the student-athletes' income limitations, because possibly financial aid may be premised on the participation in intercollegiate athletics, especially when the NCAA Manual places limitations and regulations on the receipt of federal financial aid for student-athletes, and because although the income may not go directly back to the NCAA, the funding may ultimately be paid from the member institution to the NCAA in membership dues or other fees, I still would be compelled to hold that Plaintiff has failed to state a claim under Title IX upon which relief can be granted in that said "connections" with federal funding simply are too far attenuated to qualify Defendant NCAA as a recipient of federal funds thus subjected to the mandates of Title IX.

Notably, in so holding, I emphasize that I find the case *sub judice* distinguishable from that of *Horner v. Kentucky High School Athletic Association*, 43 F.3d 265, 272 (6th Cir.1994). In *Horner,* the United States Court of Appeals for the Sixth Circuit held that the Kentucky High School Athletic Association ("KHSAA"), a voluntary, self-managing, unincorporated association of public,

private and parochial schools, was a recipient of federal funds and therefore, subject to Title IX, because: (1) pursuant to Kentucky statute, it was designated as the agent for another Defendant, the Kentucky State Board for Elementary and Secondary Education, which was subject to Title IX, in its function of managing interscholastic athletics and (2) it received dues from member schools which received federal funds. *Id.* at 272. Specifically, the court stated:

> [t]he most persuasive evidence of the KHSAA's status as a recipient is the fact that its functions are statutorily decreed to be those of the Board. The association is able to perform those functions because state law expressly permits the Board to designate an agent to manage interscholastic athletics. Ky.Rev.Stat.Ann. § 156.07(1),(2). This, in combination with the fact that KHSAA receives dues from member schools which do receive federal funds, indicates that the association qualifies as an 'agent' which indirectly receives federal funds as described in 34 C.F.R. § 106.2(h), and is thus subject to Title IX.

*Id., citing, Grove City College v. Bell,* 465 U.S. 555, 564–70, 104 S.Ct. 1211, 1216–20, 79 L.Ed.2d 516 (1984). In the instant case, even if the Defendant receives dues from member schools which receive federal funds, unlike the situation in *Horner,* there is no statutory connection between the parties such that the Defendant can be considered the "agent" of its member institutions that receive federal financial assistance.

Accordingly, Defendant's Motion to Dismiss Count II of Plaintiff's Complaint for failure to state a claim upon which relief can be granted is granted and Count II of Plaintiff's Complaint is dismissed.

### III. *Plaintiff's Breach of Contract Claim.*

In Count III of her Complaint, Plaintiff has brought a state law claim for breach of contract. Specifically, Plaintiff alleges that she is the third-party beneficiary of agreements between the NCAA and member institutions to enforce the NCAA Constitution and Bylaws, agreements which were breached when Defendant denied athletic eligibility to Plaintiff thereby preventing her from re-

ceiving the benefits of the agreements. Defendant moves to dismiss Count III of Plaintiff's Complaint on multiple grounds, only one of which need be addressed at this juncture in the proceedings.

■ Jurisdiction over Count III of Plaintiff's Complaint is premised solely upon 28 U.S.C. § 1367. Complaint, ¶ 30. Section 1367(c) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—... (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In making the decision to decline to exercise jurisdiction under § 1367(c), the United States Court of Appeals for the Third Circuit instructs that I "should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants'." *Growth Horizons, Inc. v. Delaware County, Pa.,* 983 F.2d 1277, 1284 (3d Cir.1993), *quoting, United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

■ Given my above holdings dismissing Counts I and II of Plaintiff's Complaint, the claims in Plaintiff's Complaint over which I had original jurisdiction, and taking into account the generally accepted principles of judicial economy, convenience and fairness to the litigants, I see no reason, given the preliminary stage at which this action is presently postured, to retain jurisdiction over Plaintiff's state law breach of contract claim and thus, I hereby elect under § 1367(c) not to exercise supplemental jurisdiction over Plaintiff's state law claim contained in Count III. Accordingly, Defendant's Motion to Dismiss Count III of Plaintiff's Complaint as a matter of law is granted and Count III of Plaintiff's Complaint is dismissed.

### *ORDER OF COURT.*

**AND NOW,** this 21st day of May, 1997, after careful consideration of the submissions of the parties and for the reasons set forth In the Opinion accompanying this Order, it is hereby **ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint (Docket # : 4) is **GRANTED** in its entirety.

It is further **ORDERED** that Plaintiff's pending Motion for Disqualification Due to Conflict of Interest (Docket # : 11) is **DISMISSED** as moot.