Lauren BUCKLEY, Plaintiff,

v.

ARCHDIOCESE OF ROCKVILLE CEN-
TRE, St. Anthony's High School, South
Huntington Free School District, Broth-
er Harold Harvers, Franciscan Brothers
of Brooklyn, Brother Peter Dawson,
Brother James McVeigh, Brother Thom-
as Grady, John Fitzgerald and Dr. Virgi-
nia Upton, Defendants.

No. 94 CV 5684(NG)(MO).

United States District Court,
E.D. New York.

Feb. 5, 1998.

Cary Scott Goldinger, Garden City, NY,
for Plaintiff Lauren Buckley.

Kevin P. McDonough, Bennett, Pape, Rich
& Schure, Rockville Centre, NY, for Defen-
dants Roman Catholic Diocese of Rockville
Centre, Franciscan Brothers of Brooklyn and
Brother Thomas Grady.

Robert C. Minion, Mulholland, Minion &
Roe, Williston Park, NY, for Defendants St.
Anthony's High School, Brother Peter Daw-
son, Brother James McVeigh and John Fitz-
gerald.

Charles F. Adams, Bay Shore, NY, for
Defendant Brother Harold Harvers.

Brian P. Callahan, Devitt, Spellman, Bar-
rett, Callahan, Leyden & Kenney, Smith-
town, NY, for Defendants South Huntington

Union Free School District and Dr. Virginia Upton.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

The plaintiff, a former student at St. Anthony's High School ("St.Anthony's"), alleges that during her tenure as a student at the school, she was subjected to a campaign of sexual harassment by Brother Harold Harvers, a teacher at St. Anthony's. St. Anthony's is a Catholic high school operated by the Franciscan Brothers of Brooklyn ("the Brothers"). Liability as to St. Anthony's and the Brothers is predicated upon allegations that they failed to properly supervise Brother Harold and failed to respond effectively to complaints regarding his behavior. Liability as to the Archdiocese of Rockville Centre ("the Diocese") is premised upon allegations that it owned and/or supervised St. Anthony's and its employees, either directly or through the Brothers.

Brother Peter Dawson, Brother James McVeigh, and Brother Thomas Grady were, respectively, the Principal of St. Anthony's, the Dean of Admissions of St. Anthony's, and the Supervisor General of the Brothers during the time the plaintiff was a student at the school. Dr. Virginia Upton was a school psychologist working at St. Anthony's at the time the plaintiff was a student there, but she was an employee of the South Huntington Union Free School District ("the District"), a public agency. The remaining individual defendant, John Fitzgerald, is alleged to have been a guidance counselor at St. Anthony's when the plaintiff was a student there. In the complaint, and in the briefing on the instant motion, it is not made clear who exactly employs Fitzgerald. The individual defendants are alleged either to have been negligent with respect to the supervision of Brother Harold or to have failed to respond appropriately to complaints regarding his behavior. Liability is alleged to lie as to the District because of its employment of Dr. Upton.

The plaintiff alleges that "(t)his is an action arising under Title IX of the Education Amendments of 1972 (amending the Higher Education Act of 1965), 20 U.S.C. §§ 1681 *et seq.*" ¶ 1.[1] The plaintiff has also asserted five common law claims, which are as follows: "Intentional Infliction of Emotional Harm" against all defendants; "Negligent Supervision" against the Diocese, the Brothers and St. Anthony's; "Breach of Contract" against the Diocese, the Brothers and St. Anthony's; "Denial of Educational Opportunity" against all defendants; and "Unwelcome and Offensive Touching" against Brother Harold. Since there is not diversity of citizenship, *see* 28 U.S.C. § 1332, federal subject matter jurisdiction is asserted pursuant to 28 U.S.C. § 1331, based upon the Title IX claim, which is the only federal claim asserted. At a pretrial conference before me on July 29, 1997, I directed the parties to brief the issue of subject matter jurisdiction and they have now done so.

As a threshold matter, even though raised *sua sponte* by the Court, and even though raised at a developed stage of the litigation, there is no question that it is proper to conduct this review of the issue of subject matter jurisdiction. "It is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food Local 919 v. CenterMark Properties,* 30 F.3d 298, 301 (2d Cir.1994) (citation omitted). *See* Federal Rule of Civil Procedure 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

### A. Title IX Claims.

In relevant part, Title IX provides as follows:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any edu-

---

1. References to "¶ __" are to paragraphs of the Amended Verified Complaint, dated December 27, 1994.

cation program or activity receiving Federal financial assistance, ...

20 U.S.C. § 1681(a). Pursuant to 20 U.S.C. § 1687, Title IX applies to an entire education program or activity if "any part" of such program or activity "is extended Federal financial assistance." [2] Pursuant to regulation, "recipient" for the purposes of Title IX is defined as follows:

> "(A)ny State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any private agency, institution or organization, or other entity, or any other person, to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives or benefits from such assistance, including any subunit, successor, assignee or transferee." .

34 C.F.R. § 106.2(h).

■ As already stated, the plaintiff has asserted Title IX claims against all defendants, but has alleged that only one, the District, is a recipient of federal funding, which allegation the District admits. At the July 29 pretrial conference, held more than two and one-half years after the institution of the litigation, the plaintiff's counsel was unable to articulate any basis for holding that any defendant but the District receives federal funding. However, in her briefing on the question of subject matter jurisdiction, the plaintiff now argues that the funding that the District receives may be imputed to all other defendants through the agency of Dr.

Upton so as to make all of them subject to Title IX liability.

It is undisputed that Dr. Upton is an employee of the District and that she works at St. Anthony's. The plaintiff, however, has made little effort to detail the precise nature of the relationship between St. Anthony's and Dr. Upton. The plaintiff cites deposition testimony to the effect that Dr. Upton provides psychological counseling services to St. Anthony's pursuant to law, but there is no reference in the record as to which law that might be. Further, whatever other arrangements, contractual or otherwise, that might govern her work at St. Anthony's are not specified. Indeed, it is not even clear from the record whether Dr. Upton works full or part time at St. Anthony's.

Having chosen to eschew factual specifics, therefore, the plaintiff is left to posit a purely conclusory argument, namely: since the District receives federal funding and is thus subject to Title IX, and since Dr. Upton is an employee of the District, that Dr. Upton works at St. Anthony's makes St. Anthony's subject to Title IX. Further, since the Brothers operate St. Anthony's, and since the Diocese has an "intimate relationship" with the school, they are both subject to Title IX as well.[3]

The plaintiff correctly notes that an entity that receives federal funding indirectly, through another entity, may be held to be a recipient of federal financial assistance for the purposes of Title IX. *Grove City College v. Bell,* 465 U.S. at 569–70. However, the plaintiff cites no relevant law beyond this

---

2. Section 1687 was enacted in 1988 to partially overrule the Supreme Court's decision in *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), which held that the reach of Title IX extended only to particular programs or activities receiving federal funding, and not to educational institutions as wholes. *See O'Connor v. Davis,* 126 F.3d 112, 117 (2d Cir.1997).

3. At the July 29 pretrial conference, counsel for the plaintiff did not quarrel with the position that none of the individual defendants are subject to Title IX because, as a matter of law, individuals are not covered by the statute. Transcript of July 29, 1997 Conference at 10. In briefing the issue of subject matter jurisdiction, however, the plaintiff cites *Mennone v. Gordon,* 889 F.Supp. 53 (D.Conn.1995), for the proposition that Title IX liability may indeed be extended to the individual

defendants. That decision concluded that Title IX liability could be asserted against an individual who operates or controls a particular educational program or activity. 889 F.Supp. at 56. The plaintiff makes no effort to demonstrate that Dr. Upton qualifies under this standard. In any event, I agree with those courts that have rejected the application of Title IX liability to individuals. *See Smith v. Metropolitan School Dist.,* 128 F.3d 1014, 1019–1020 (7th Cir.1997); *Nelson v. Temple Univ.,* 920 F.Supp. 633, 636–37 (E.D.Pa. 1996); *Pallett v. Palma,* 914 F.Supp. 1018, 1025 (S.D.N.Y.1996), *rev'd on other grounds,* 119 F.3d 80 (2d Cir.1997); *Torres v. New York Univ.,* 1996 WL 15691 at *2 (S.D.N.Y. Jan 17, 1996). Accordingly, the Title IX claims asserted against all of the individual defendants must be dismissed.

general principle to support the conclusion that contact with Dr. Upton is alone sufficient to make St. Anthony's, the Brothers and the Diocese subject to the statute. A review of the case law clearly establishes that it is not sufficient.

Title IX liability simply cannot be imputed to St. Anthony's, the Brothers, and the Diocese in the mechanical fashion that the plaintiff suggests. For example, in *O'Connor v. Davis, supra,* the plaintiff, O'Connor, was a student at Marymount College. As part of her educational program, O'Connor, pursuant to a federally funded work/study program, undertook an internship at Rockland Psychiatric Center. She alleged that she had been subjected to sexual harassment by a psychiatrist employed by Rockland.

The Second Circuit affirmed the district court's holding that a Title IX claim could not be asserted against Rockland. The court first held that, standing alone, Rockland did not qualify as an "education program" as contemplated by Title IX. 126 F.3d at 118. Further, in a holding clearly relevant to the instant case, the court held that "the fact that Marymount operates an 'education program' may not be imputed to Rockland simply because O'Connor was a student at the former while she performed volunteer work at the latter." *Id.* The court continued:

> Factors that could lead to a different conclusion simply are not present here: the two entities have no institutional affiliation; there is no written agreement binding the two entities in any way; no staff are shared; no funds are circulated between them; and, indeed Marymount students had previously volunteered at Rockland on only a few occasions.

*Id.*

Here, too, the plaintiff has asserted no formal institutional affiliation between St. Anthony's and the District, nor does the record reveal any formal agreements between the two. The two institutions, according to the plaintiff, "share" a single employee, Dr. Upton. There is no evidence that they share funds.

Cases that specifically consider the imputation of Title IX liability through indirect funding further support the conclusion that no Title IX liability lies in this case beyond that asserted against the District. Thus, in *Horner v. Kentucky High School Athletic Assn.,* 43 F.3d 265 (6th Cir.1994), the Sixth Circuit held that Title IX liability could be asserted against the Kentucky State Board of Education, which was held to be an indirect recipient of federal funds through its operation and management of the Kentucky Department of Education, which directly received federal funding. 43 F.3d at 271–72. Although a "closer question," the court also held that the Kentucky High School Athletic Association ("KHSAA") could be deemed an indirect recipient of federal funding because it was a statutorily designated agent of the Board of Education, and because it received dues from individual schools that were direct recipients of federal funds. *Id.* at 272; *see also Graves v. Methodist Youth Services, Inc.,* 624 F.Supp. 429 (N.D.Ill.1985) (social services organization that received funding from state agency, more than eighty percent of whose funding was from federal sources, was recipient of federal funds).

A useful counterpoint to *Horner* is the recent decision in *Smith v. National Collegiate Athletic Assn.,* 978 F.Supp. 213 (W.D.Pa. 1997). In that case, the plaintiff brought a Title IX claim against the National Collegiate Athletic Association ("NCAA"), which itself receives no federal funds. She asserted that the NCAA had "connections" with federal funding sufficient to make it subject to Title IX because it is supported by dues from member colleges and universities that directly receive federal funding. Distinguishing *Horner,* the court rejected this conclusion, holding that the NCAA's relationship to federal funding was too "attenuated" to justify subjecting it to Title IX. 978 F.Supp. at 219. Instead, the court asserted that "unlike the situation in *Horner,* there is no statutory connection between the parties such that [the NCAA] can be considered the 'agent' of its member institutions that receive federal financial assistance." *Id.* at 220.

This case is far closer to *Smith* than to *Horner.* Indeed, the asserted connection of St. Anthony's, let alone that of the Brothers and the Diocese, to the District is more

attenuated than that asserted in *Smith.* Here, it is not asserted that St. Anthony's receives any funds from the District, merely that it receives the services of a single employee of the District, Dr. Upton.[4]

■ The court must be mindful that Congress enacted Title IX "to avoid the use of *federal resources* to support discriminatory practices." *Cannon v. Univ. of Chicago,* 441 U.S. 677, 704, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (emphasis added). The plaintiff has not demonstrated that St. Anthony's, the Brothers or the Diocese are the recipients of federal resources. Accordingly, the Title IX claims brought against them will be dismissed.[5]

## B. Supplemental Jurisdiction.

■ There is thus a single viable federal claim in this case, the Title IX claim asserted against the District. The question then becomes whether the Court should exercise supplemental jurisdiction over all of the remaining common law claims against the various defendants. The scope of the Court's supplemental jurisdiction has recently been codified at 28 U.S.C. § 1367, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

"Supplemental jurisdiction is a doctrine of discretion, not of right." *ABF Capital Management v. Askin Capital Management,* 957 F.Supp. 1308, 1323 (S.D.N.Y.1997) (citing *United Mine Workers v. Gibbs,* 383 U.S.

715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Thus, Section 1367(c)(2) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."

While the common law claims in this case are sufficiently related to the Title IX claim against the District for the purposes of Section 1367(a), it cannot be seriously questioned that the former will predominate over the latter in any trial of this action. As set forth in the complaint, the District's role in the events at issue was, at most, peripheral. The heart of the case is, of course, the alleged misconduct of Brother Harold with respect to the plaintiff. It is therefore clear that the establishment of liability against the District is a matter of considerable contingency. The issue of the District's liability may only be determined upon successive findings that 1) Brother Harold engaged in actionable misconduct toward the plaintiff; 2) Dr. Upton responded in a negligent manner with respect to complaints regarding Brother Harold's conduct; 3) the District had a duty to monitor Dr. Upton's performance while she worked at St. Anthony's; and 4) the District breached this duty. In addition, the state of the law with respect to establishing Title IX liability against the District is uncertain. The issue of whether a school district may be found liable under Title IX for sexual harassment taking place within its *own* schools is currently before the Supreme Court. *See Doe v. Lago Vista Independent School District,* 106 F.3d 1223 (5th Cir.), *cert. granted,* — U.S. ——, 118 S.Ct. 595, 139 L.Ed.2d 431 (1997). Depending upon the Supreme

---

4. The plaintiff's resort to the definition of "federal financial assistance" in 34 C.F.R. § 106.2(g) is completely misplaced. That regulation states that federal financial assistance includes "[p]rovision of the services of Federal personnel." 34 C.F.R. § 106.2(g)(3). There is no plausible argument that Dr. Upton is a federal employee just because she works for a school district that receives federal funding.

5. Counsel for St. Anthony's notes that the school indirectly receives nominal federal funds through 1) the provision of a newsletter to the parents of public and private school children pursuant to

The Safe and Drug Free Schools and Communities Program and 2) the reimbursement to St. Anthony's math and science teachers of the costs of attending certain professional activities pursuant to the Eisenhower Professional Development Program. In addition, St. Anthony's receives certain instructional materials, valued at $1,600, pursuant to the Elementary and Secondary Education Act. Taken together, this funding is *de minimis* and does not affect the conclusion that St. Anthony's is not a recipient of federal funds for the purposes of Title IX.

Court's disposition of the issue, it may very soon be the case that the plaintiff's Title IX claim against the District may face more demanding standards or may even dissolve entirely.

Obviously, then, since the Title IX claim against the District will not even be considered unless the plaintiff is successful on at least some of the claims against the other defendants, the question of the District's liability will be anything but a focus of the trial in this matter. *See State of New York v. Philip Morris, Inc.,* 1998 WL 2574 at *2 (S.D.N.Y. Jan.5, 1998) (Section 1367(c) should be invoked "where a state claim constitutes the real body of the case, to which the federal claim is only an appendage"; citing *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 789 (3d Cir.1995)). In analogous situations, district courts have declined to exercise supplemental jurisdiction pursuant to section 1367. *See, e.g., North Carolina Life & Accident & Health Ins. v. Alcatel,* 876 F.Supp. 748, 755 (E.D.N.C.) (declining to exercise supplemental jurisdiction over state law claims where ripening of federal ERISA claim was "totally dependent" upon disposition of state law claims), *aff'd.,* 72 F.3d 127 (4th Cir.1995); *Bodenner v. Graves,* 828 F.Supp. 516, 518 (W.D.Mich.1993) (where case presented a single valid federal claim, court would not exercise supplemental jurisdiction over twenty-eight state law claims).

The inquiry does not end here, however. In determining whether or not to exercise supplemental jurisdiction, the court is charged with taking into account "considerations of judicial economy, convenience and fairness to litigants," *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994), and these are not inconsiderable in this case. As the plaintiff notes, this case is now more than three years old, discovery is essentially complete and a trial on the merits is not far off. There is also the matter of the sensitive nature of the allegations asserted in this action. In this regard, I am mindful that our Circuit has admonished that "[t]he right of access to courts by those who feel they are aggrieved should not be curtailed; and this is particularly so in the instance of children who, rightly or wrongly, attribute such grievances to

their very custodians." *Ad Hoc Committee of Concerned Teachers v. Greenburgh No.11 Union Free School Dist.,* 873 F.2d 25, 31 (2d Cir.1989) (quoting *Child v. Beame,* 412 F.Supp. 593, 599 (S.D.N.Y.1976)). However, the egregious imbalance between the federal claim and the state claims asserted simply cannot be overlooked. In a trial in this matter, consideration of the merits of the federal claim will be, at best, a tertiary aspect of the proceeding. This is, in essence, a state law case with an additional federal jurisdictional basis only for the claim against the District. In addition, declining to exercise supplemental jurisdiction here will in no way deny the plaintiff a forum for the adjudication of her claims. Section 1367 specifically provides that the limitations period for a claim dismissed by a federal court upon declining to exercise supplemental jurisdiction "shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). New York law does provide for a longer tolling period, one of six months. *See* N.Y. C.P.L.R. § 204(a). Thus, upon my declining to exercise supplemental jurisdiction over the common law claims asserted by the plaintiff, she may repair to state court where, as the defendants themselves admit, the discovery already taken may be utilized at trial. I conclude that this is the best course. Indeed, it is not disputed that this case is trial ready and that if the plaintiff files a note of issue, there will be no basis upon which the defendants could dispute its trial readiness.

## CONCLUSION

The Title IX claims brought against all defendants, save for that brought against the District, are dismissed for lack of subject matter jurisdiction. All remaining claims, save for the Title IX claim asserted against the District, and the two common law claims asserted against the District—intentional infliction of emotional harm and denial of educational opportunity—are dismissed under 28 U.S.C. § 1367(c)(2).

The plaintiff is directed to inform the Court within twenty days of this memorandum and order whether or not she intends to

pursue her claims against the District in this Court. If she does intend to do so, the plaintiff and the District should agree on a schedule for briefing the summary judgment motion that the District has indicated it wishes to bring. Any such schedule should be submitted to the court within thirty days of this memorandum and order.

**SO ORDERED.**